IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Jerry Glendon Modisette,<br>Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:18cv533 (LO/MSN) |
| United States of America,<br>Defendant. | )<br>)<br>)<br>) | |

## MEMORANDUM OPINION

Jerry Modisette, a federal inmate proceeding pro se, initiated this suit pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-80. Defendant United States of America ("defendant" or "the government") has filed a motion to dismiss or, in the alternative, motion for summary judgment [Dkt. No. 31-32] and a memorandum of law accompanied by documentary exhibits [Dkt. No. 33] in support of its position. Plaintiff received the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. Nos. 31-1, 32-1. He filed a response to defendant's motion [Dkt. No. 35], defendant submitted a reply to plaintiff's response [Dkt. No. 39], and plaintiff filed a surreply [Dkt. No. 40]. This matter is therefore ripe for adjudication. For the reasons that follow, defendant's motion will be granted such that several claims will be dismissed, and judgment will enter in favor of defendant as to those that remain.

### I. Background

Plaintiff is an inmate incarcerated at FCI Petersburg ("Petersburg"). Dkt. No. 4 ("Am. Compl.") ¶ 1.[1] Before being transferred to his current institution of confinement, he, from at

---

[1] This memorandum opinion cites specific paragraphs in plaintiff's amended complaint when possible and ECF-assigned page numbers when referring to exhibits attached to the pleadings.

least January 2012 through April 2014, was incarcerated at USP Tucson ("Tucson") in Arizona. Id. at ¶¶ 8-12. At Tucson, in January 2012, plaintiff suffered a seizure and struck his head and neck on a table while falling to the ground. Id. at ¶ 8. Tucson staff were notified of the incident and instructed plaintiff to report to medical personnel the next morning. Id. at ¶ 9. Plaintiff reported to medical as instructed and was scheduled for an x-ray. Id. at p. 8. On February 22, 2012, plaintiff saw Doctor Longfellow, who informed plaintiff he had "C2-C3 loss of disc height and end plate irregularity." Id. at ¶ 10. On March 8, 2012, plaintiff requested from Dr. Khan provision of an MRI scan. Id. at ¶ 11.

On April 8, 2014, plaintiff arrived at FCI Petersburg and informed Physician Assistant Hall that his neck was injured but that "still nothing was done in a timely manner." Id. at ¶ 12. At some point in late 2014 or early 2015, plaintiff underwent another x-ray examination. Id. at p. 8. On September 23, 2015, plaintiff saw Orthopedist Dr. Prakash, who ordered an MRI examination for plaintiff. Id. at ¶ 13. Plaintiff underwent the MRI exam on November 3, 2016, after which his "injury was finally diagnosed as being multilevel mild disc herniations and degenerative disc bulging . . . ." Id. at ¶ 14. On November 6, 2017, plaintiff was sent offsite to see Dr. Prakasam Kalluri, who "did not want to operate" at that time and indicated that physical therapy, injections, and gabapentin represented viable options to manage plaintiff's condition. Id. at ¶ 16; id. at p. 8.

Defendant asserts that the Bureau of Prisons ("BOP") received plaintiff's administrative tort claim paperwork on December 28, 2017, see Dkt. No. 33, p. 4, but the Court cannot identify any documentary exhibits that support this assertion. On January 10, 2018, however, BOP sent a letter confirming receipt of plaintiff's claims. Id. at p. 9. In his paperwork, plaintiff claimed to

have suffered personal injuries arising from the medical care he received beginning January 15, 2012 and continuing through 2017. Id. at pp. 6-9.

On February 15, 2018, plaintiff informed Petersburg staff that he had to discontinue taking verlafaxine due to an allergic reaction he had when taking a drug in the "same class of prescription medication." Id. at ¶ 17. Several days later, Dr. Marrero, a member of Petersburg medical staff, "disapproved" of providing plaintiff with gabapentin. Id. at ¶ 18. On March 20, 2018, plaintiff "was taken ... for an offsite Rehabilitation" to treat his neck injury. Id. at ¶ 19.

On May 3, 2018, plaintiff filed his initial complaint, initiating this civil action. See Dkt. No. 1. His amended complaint asserts that BOP was negligent in providing him medical care for his neck injury. He alleges that "[t]he carelessness and negligence of Defendant ... consisted of the following:

 a. Failure to have schedule [sic] Plaintiff for MRI when seizure occurred and Plaintiff complained of neck injury;

 b. Failure to conform to the requisite standard of reasonable medical care and skill under the circumstances and at the time with respect of Plaintiff;

 c. Failure to provide and render reasonable medical care to plaintiff under the circumstances;

 d. Failure to properly select, train, and supervise it's [sic] agents, ostensible agents, servants and/or employees to assure Plaintiff's reasonable treatment and care under the circumstances;

 e. Failure to diagnose Plaintiff's neck injury and to treat this Plaintiff's injuries appropriately and expeditiously;

 f. Failure to ensure inmates in the Federal Bureau of Prison's Prisons [sic] System received adequate healthcare;

 g. Failure to ensure inmates in the Federal Bureau of Prison's Prisons [sic] System receive timely health care;

> h. Such other acts and/or omissions constituting carelessnes [sic], negligence and/or malpractice as may become evident during the course of discovery and/or at trial to this action."

Dkt. No. 4, ¶ 23.

On May 29, 2019, defendant hand-delivered a letter to plaintiff requesting certification that plaintiff had received an expert's written opinion prior to service of the complaint or an explanation as to why plaintiff felt such an opinion was unnecessary. Defendant's Exhibit ("DEX") 1. Plaintiff responded that he had not obtained an expert's opinion, citing indigence and the geographical remoteness of his current institution to Tucson, where plaintiff accrued the injury foundational to his claims. DEX 2. Defendant then filed the motions currently before the Court through which it seeks dismissal of plaintiff's claims or entry of judgment in its favor. Dkt. Nos. 31-32.

## II. Standard of Review

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dismiss a complaint or its claims for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a defendant challenges the existence of subject-matter jurisdiction, the Court may "regard the pleadings as mere evidence on the issue [ ] and may consider evidence outside [the] pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); see Virginia v. United States, 926 F. Supp. 537, 540 (E.D. Va.1995) (noting that, upon a defendant's challenge to the existence of subject-matter jurisdiction, the court is to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject[-]matter jurisdiction exists"). As the party asserting jurisdiction, it is

4

plaintiff's burden to prove that federal jurisdiction over his claim is proper. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

B.  **Motion for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial ... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

The FTCA provides a limited waiver of the United States' sovereign immunity to allow actions seeking monetary relief for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The government is only "liable in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and the extent of its liability is determined "in accordance with the law of the place where the act or omission

5

occurred." 28 U.S.C. § 1346(b)(1). Here, where plaintiff's allegations surround events taking place in Arizona and Virginia, these two states' laws govern the manner and extent to which the United States may be liable as a defendant. Accordingly, the Arizona Medical Malpractice Act ("AMMA"), A.R.S. § 12-561(2), and the Virginia Medical Malpractice Act ("VMMA"), Va. Code §§ 8.01-581.1, et seq., provide the framework upon which to analyze plaintiff's medical malpractice claims under the FTCA. See Mann v. United States, 2012 WL 273690 (D. Ariz. Jan. 31, 2012) (applying AMMA in FTCA action involving federal health care providers in Arizona); Starns v. United States, 923 F.2d 34 (4th Cir. 1991) (applying VMMA in FTCA action involving federally operated health care providers in Virginia).

A.  **Medical Malpractice Act Expert Witness Requirements**

Both Virginia and Arizona state law require, in almost all circumstances, that a party alleging medical malpractice obtain the assistance of an expert to succeed on his or her claims. See Va. Code § 8.01-20.1 ("Every motion for judgment, counter claim, or third party claim in a medical malpractice action, at the time the plaintiff requests service of process upon a defendant ... shall be deemed a certification that the plaintiff has obtained from an expert witness ... a written opinion signed by the expert witness that, based upon a reasonable understanding of the facts, the defendant ... deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed"); see also Seisinger v. Siebel, 220 Ariz. 85, 94 (2009) ("Arizona courts have long held that the standard of care normally must be established by expert medical testimony").

Each state, however, has also created a narrow safety valve to allow egregious cases to proceed without the presentation of expert testimony or certification. See Va. Code 8.01-20.1 (A "certification is not necessary if the plaintiff, in good faith, alleges a medical malpractice action

that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience"); see also Nunsuch ex rel. Nunsuch v. United States, 221 F. Supp. 2d 1027, 1032-33 (D. Ariz. 2001) ("Ordinarily, a plaintiff must present expert evidence of the accepted conduct of the profession and the defendant's deviation from that standard unless the negligence is so grossly apparent that a layman would have no difficulty recognizing it.").

Plaintiff in this case has not, as is required, presented "a written statement ... [indicating] whether or not expert opinion testimony is necessary to prove" a deviation from defendant's standard of care related to the Tucson claims. A.R.S. § 12-2603(A). And plaintiff has admitted that he has failed to obtain a written expert certification in support of his Petersburg claims. See DEX 2. He instead seems to argue that the actions of the medical professionals at the institutions in Tucson and Petersburg were so grossly negligent that no expert testimony would be necessary to prove a deviation from their duties. See Dkt. No. 35, p. 9. For reasons explained in more depth below, even forgiving plaintiff's failure to submit a written statement in compliance with Arizona law, plaintiff's Tucson claims are time-barred. And, contrary to plaintiff's contentions, whether Petersburg officials deviated from their standard of care is not within a lay person's knowledge, and plaintiff's Petersburg claims therefore require expert testimony to prevail.[2]

---

[2] Plaintiff urges the Court to "appoint an expert witness due to Mr. Modisette's Indigent status." Dkt. No. 35, p. 9. But, "[t]he in forma pauperis statute, 28 U.S.C. § 1915, does not authorize federal courts to appoint or authorize payment for expert witnesses for prisoners or other indigent litigants. Ordinarily, the plaintiff must bear the costs of his litigation, including expert expenses, even in pro se cases." Pickens v. Lewis, 2017 WL 2198342, at *2 (W.D.N.C. May 18, 2017) (citing Pedraza v. Jones, 71 F.3d 194, 196 (5th Cir. 1995)); Malik v. Lavalley, 994 F.2d 90 (2d Cir. 1993); Boring v. Kozakiewicz, 833 F.2d 468, 474 (3d Cir. 1987) (finding inmate's dilemma in being unable to proceed with suit because of inability to pay for expert witness was no different than that of non-prisoner claimants who face similar problems; to authorize government funding for such fees would, in effect, be granting inmates better treatment than non-inmates).

Accordingly, plaintiff's failure to obtain the certification of an expert is fatal to his Petersburg claims.

### i. *Tucson Claims*

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). A claim accrues when the plaintiff knows or reasonably should have known of the existence and the cause of his injury. See United States v. Kubrick, 444 U.S. 111, 123-25 (1979). Here, the immediate cause of plaintiff's injury was a seizure and a resulting fall. Plaintiff claims these events occurred in January 2012, see Am Compl. at ¶ 8, and that Dr. Longfellow informed plaintiff of disc irregularities the following month, see Am. Compl. at ¶ 10. Following his transfer, in April of 2014, plaintiff also expressed to Petersburg staff that he was aware of his neck injury. See id. at ¶ 12. Accordingly, any claim for nontreatment of plaintiff's injury accrued as early as February of 2012, over five years from the date plaintiff ultimately filed his FTCA paperwork with BOP, or as late as April 2014, over three years from plaintiff's filing date. In either case, plaintiff's claims are barred.

Plaintiff relies on two theories to argue that his claims are not time-barred. He states first that, by virtue of the "continuous treatment rule," his claims are not barred. See Dkt. No. 35, p. 7. This doctrine holds that a statute of limitations does not begin to run on a medical malpractice claim so long as a claimant remains under the "continuous treatment" of a physician whose negligence is alleged to have caused the injury underlying the claim; once the treatment ceases, the claim accrues. See Miller v. United States, 932 F.2d 301, 304 (4th Cir. 1991). Invoking this theory, plaintiff appears to suggest that, because he allegedly continued to receive deficient care after his transfer to Petersburg, his Tucson claims were not barred. But the "continuous

8

treatment" theory applies only "when the treatment at issue is for the same problem and by the same doctor, or that doctor's associates or other doctors operating under his direction," not to "treatment from succeeding government physicians ... who [are] not claimed to have acted in direct concert with" the original physician. Id. at 305 (quoting Brown v. United States, 353 F.2d 578, 580 (9th Cir. 1965)). Accordingly, this argument offers plaintiff no salvation.

Nor does—to the extent plaintiff relies on it—the "continuing violation" doctrine save the Tucson claims from the FTCA's statute of limitations. This theory states that "when a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff under certain circumstances may allege "a continuing violation" for which the statute of limitations runs anew with each violation." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). A plaintiff relying on this theory, however, must allege that the "illegal act was [part of] a fixed and continuing practice." Fleming v. United States, 200 F. Supp. 3d 603, 610 (D. Md. 2016); see also A Society Without a Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011). In this case, plaintiff alleges discrete acts or omissions committed at different facilities in different years by different physicians all exercising independent medical judgment. Plaintiff's allegations, then, do not establish the existence of a continuing practice.

In summary, here, where plaintiff filed an administrative claim with BOP more than two years after his claim had accrued, and where the continuous treatment and continuing violation doctrines do not apply, plaintiff's claims are barred by the FTCA's statute of limitations. Accordingly, these claims will be dismissed as time-barred.

### ii. *Petersburg Claims*

Plaintiff contends that Petersburg doctors failed "to provide and render reasonable medical care ... under the circumstances" and failed "to diagnose Plaintiff's neck injury and to

9

treat [his] injuries appropriately and expeditiously."[3] See Am. Compl. ¶ 23. More specifically, plaintiff alleges that "nothing was done in a timely manner" after he informed Physician Assistant Hall of his neck injury, see id. at ¶ 12, that Dr. Kalluri recommended plaintiff not receive surgery but instead treat his condition with physical therapy, gabapentin, and injections, see id. at ¶ 17, and that Dr. Marrero later disapproved of providing plaintiff the gabapentin referred by Dr. Kalluri, see id. at ¶ 18. Plaintiff asserts that these acts or omissions constituted medical malpractice and, in his responses to defendant's motion, argues that they represent negligent acts "within the range of [a] jury's common knowledge and experience" such that an expert certification is unnecessary. See Va. Code § 8.01-20.1.

Plaintiff is incorrect that his claims do not require expert certification. Whether a doctor's decision to conduct an x-ray, MRI, or other imaging procedure while foregoing another constitutes a violation of his or her duty is not a matter of "common knowledge and experience." Similarly, whether physicians deviate from their standard of care by waiting to provide a patient diagnostic assessment or treatment within a certain timeframe is a question answerable only by an expert. See Bond v. United States, 2008 WL 4774004, at *3 (E.D. Va. Oct. 27, 2008) (holding that VMMA certification required for plaintiff's argument that two-month delay in

---

[3] Plaintiff also specifically claims that Tucson doctors' failed to conduct an MRI after his seizure and fall, that defendant negligently trained, supervised, and hired the individuals who ultimately treated plaintiff, see Am. Compl. ¶ 23(d), and that defendant failed to ensure all inmates in the BOP's custody "received adequate" and "timely healthcare," see Am. Compl. ¶¶ 23(f)-(g). To the extent that plaintiff has even alleged facts in support of these claims, they must nevertheless be dismissed based on plaintiff's failure to administratively present them prior to initiating this suit. See Am. Compl., pp. 6-8; Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986) ("[P]rior to bringing an action against the United States, a claimant shall have first presented the claim to the appropriate Federal agency") (internal quotations omitted) (quoting 28 U.S.C. § 2675(a)). The presentation requirement is jurisdictional, and plaintiff's failure to present several of the claims articulated in his complaint therefore necessitates their dismissal. See Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994).

10

examination of finger caused by defendants constituted improper treatment). Whether electing to pursue non-surgical routes of treatment when surgery is an option constitutes a deviation from a doctor's standard of care, too, is outside the common knowledge and experience of a jury. See Rundle v. Carter, 91 Va. Cir. 177, 2015 WL 12591842, at *3 (Va. Cir. Ct. 2015) ("Given that a jury is unlikely to be equipped with the knowledge necessary to determine whether Defendants' failure to schedule Plaintiff's surgery according to her wishes ... compl[ies] with or deviate[s] from the applicable standard of care, the Court finds that expert certification was necessary"). Finally, determination of whether a doctor's decision to provide one form of prescription medication over another constitutes a deviation of a doctor's duty of care requires expert testimony. See Parker v. United States, 475 F. Supp. 2d 594, 597 (E.D. Va. 2007) ("[I]t is difficult to imagine that a factfinder, equipped solely with an average person's common knowledge and experience, may appropriately judge, inter alia, (i) what actions the prison medical staff should have taken when plaintiff complained of headaches ... and (iii) what the proper course of treatment was for plaintiff's condition"). Judgment will enter in favor of defendant as to these claims.[4]

---

[4] In his surreply, plaintiff requests that the Court grant discovery so plaintiff may ascertain facts or evidence to survive defendant's motion for summary judgment. See Dkt. No. 40. Federal Rule of Civil Procedure 56(d) allows for discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Here, where the only issue relevant to summary judgment is whether plaintiff has obtained an expert certification as required by the VMMA, he has not established that he was unable to present facts essential to justify his opposition. In fact, plaintiff admits his failure to obtain an expert certification. See DEX 2. And inmates proceeding under the FTCA are not exempt from the certification requirement "despite the fact that [their] prisoner status adds hurdles to any attempt to obtain an expert." Kerr v. U.S. Dept. of Justice, 2008 WL 3928701, at *4 (E.D. Va. Aug 21, 2008). Plaintiff's request for discovery is therefore denied.

B. **Exhaustion of Remaining Petersburg Claims**

To the extent that plaintiff has alleged facts supportive of claims that arose after the filing of his FTCA administrative paperwork in December 2017 or January 2018, those claims are unexhausted and must be dismissed. See Henderson, 785 F.2d 121; Ahmed, 30 F.3d 514.

C. **Remaining Motion to Clarify PLRA Fees**

Plaintiff has filed a "Motion to Clarify and Cure and to Modify PLRA Fees." Dkt. No. 29. In his filing, plaintiff requests that this Court combine the $350.00 filing fee for this action with the $505.00 filing fee plaintiff incurred for his appeal such that he is charged 20% of his monthly trust deposits only once and not 20% for each action (this case and the appeal). Plaintiff effectively requests permission to pay the fees for each case sequentially rather than simultaneously. But the Supreme Court has addressed this issue and held that 28 U.S.C. § 1915(b) "calls for monthly payments of 20 percent of the preceding month's income simultaneously for each action pursued." Bruce v. Samuels, 136 S. Ct. 627, 632 (2016) (internal quotations omitted) (quoting 28 U.S.C. 1915(b)). Accordingly, plaintiff's motion must be denied.

## IV. Conclusion

For the reasons stated above, several of plaintiff's claims are either barred by the FTCA's statute of limitations or are unexhausted and must be dismissed, and defendant is entitled to judgment in its favor as to the others. An appropriate order will issue.

Entered this 26th day of Nov. 2019.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

12